**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

In re Application of

CHEVRON CORPORATION,

          Applicant,

To Issue a Subpoena for the Taking of a
Deposition and the Production of Documents.

Misc. No. : 10-371 (CK)

**RESPONSE OF THE REPUBLIC OF ECUADOR TO CHEVRON'S APPLICATION
FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS**

C. MacNeil Mitchell
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Phone:   (212) 294-6700
Fax:       (212) 294-4700
E-mail:  cmitchel@winston.com

Eric W. Bloom (Bar No. 417819)
Lauren M. Butcher (Bar No. 494748)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
Phone:   (202) 282-5000
Fax:       (202) 282-5100
E-mail:  ebloom@winston.com

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT ................................................................................................................... 10

    I.     The Republic Has Standing To Oppose Chevron's Requested Discovery ........... 10

    II.    The Republic Does *Not* Oppose Discovery Of Non-Privileged Matters From
         Dr. Wray, So Long As Those Matters Are Reasonably Calculated To Yield
         Evidence Relevant To One Of The Foreign Proceedings ..................................... 10

    III.   The Republic Does Object To Discovery Of Dr. Wray Regarding Matters
         *Not* Reasonably Calculated To Yield Evidence Relevant To the
         UNCITRAL Arbitration ....................................................................................... 13

    IV.   The Republic Objects To Any Attempt To Discover Privileged Information ...... 15

    V.    Chevron's Prior Section 1782 Applications Provide Little Or No Guidance
         With Respect to the Republic's Limited Objections ............................................. 15

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguinda v. Texaco, Inc.*,
142 F. Supp. 2d 534 (S.D.N.Y. 2001)...................................................................................3

*Aguinda v. Texaco, Inc.*,
303 F.3d 470 (2d Cir. 2002)................................................................................... passim

*Aguinda v. Texaco, Inc.*,
945 F. Supp. 625 (S.D.N.Y. 1996) ......................................................................................2

*Am. Special Risk Ins. Co. v. Greyhound Dial Corp.*,
No. 90Civ2066, 1996 WL 551659 (S.D.N.Y. 1996) ............................................................12

*Chevron Corp. v. Stratus Consulting, Inc.*,
Case No. 10-cv-00047-JLK (D. Colo. 2010)......................................................................8

*Chevron Corp. v. Stratus Consulting, Inc.*
No. 10-cv-00047-MSK-MEH (D. Colo. 2010)...............................................................8, 16

*ChevronTexaco Corp. v. Republic of Ecuador*,
129 S. Ct. 2862 (2009)........................................................................................................6

*Earnings Performance Group, Inc. v. Quigley*,
124 Fed. Appx. 350 (6th Cir. 2005)...................................................................................12

*EEOC v. Astra USA, Inc.*,
94 F.3d 738 (1st Cir. 1996)...............................................................................................12

*EEOC v. Morgan Stanley & Co.*,
No. 01CIV8421, 2002 WL 31108179 (S.D.N.Y. 2002) .......................................................12

*Fleischmann v. McDonald's Corp. (In re Application for an Order for Judicial Assistance
in a Foreign Proceeding in the Labor Court of Braz.)*,
466 F. Supp. 2d 1020 (N.D. Ill. 2006) ...............................................................................10

*FMC Corp. v. Vendo Co.*,
196 F. Supp. 2d 1023 (E.D. Cal. 2002)...............................................................................12

*Grand River Enter. Six Nations Ltd. v. Pryor*,
No. 02 Civ 5068, 2006 WL 1517603 (S.D.N.Y. 2006) ........................................................12

*In re Application Pursuant to 28 U.S.C. 1782 for an Order Permitting Bayer Ag*,
146 F.3d 188 (3d Cir. 1998)...............................................................................................10

*In re Gulf Beach Dev. Corp.*,
    48 B.R. 40 (M.D. Fl. 1985)................................................................................12

*In re Kulzer*,
    2009 U.S. Dist. LEXIS 29771 (N.D. Ind. Apr. 8, 2009) ........................................11

*In re Letter of Request From Crown Prosecution Service*,
    870 F.2d 686 (D.C. Cir. 1989) ...........................................................................10

*In re Sarrio, S.A.*,
    119 F.3d 143 (2d Cir. 1997)................................................................................9

*In re Wilson*,
    2009 U.S. Dist. LEXIS 42046 (D. Colo. Apr. 30, 2009)........................................11

*Jota v. Texaco, Inc.*,
    157 F.3d 153 (2d Cir. 1998)................................................................................3

*Kang v. Noro-Moseley Parners*,
    246 Fed. Appx. 662, 2007 WL 2478579 (11th Cir. Sept. 4, 2007) .......................10

*Quad/Graphics Inc. v. Fass*,
    724 F.2d 1230 (7th Cir. 1983) ...........................................................................12

*Raybon v. Cont'l Tire N. Am.*,
    No. 040274, 2005 WL 1278466 (S.D. Ala. 2005) ................................................12

*Republic of Ecuador v. ChevronTexaco Corp.*,
    296 F. App'x 124 (2d Cir. 2008) .........................................................................6

*Republic of Ecuador v. ChevronTexaco Corp.*,
    376 F. Supp. 2d 334 (S.D.N.Y. 2005).............................................................2, 4, 5

*Republic of Ecuador v. ChevronTexaco Corp.*,
    499 F. Supp. 2d 452 (S.D.N.Y. 2007)...............................................................2, 6

*Republic of Ecuador v. ChevronTexaco, Inc.*,
    No. 04 cv 8378 (S.D.N.Y. July 20, 2009)..............................................................6

*The Kellogg Co. v. Sabhlok*,
    No. 5:04-CV-598, 2005 WL 2297446 (W.D. Mich. 2005) ....................................12

*Zanders v. Nat'l R.R. Passenger Corp.*,
    898 F.2d 1127 (6th Cir. 1990) ...........................................................................12

**STATUTES**

28 U.S.C. § 1782...................................................................................................... passim

New York's Recognition of Foreign Country Money-Judgments Act, N.Y. C.P.L.R. 5304 .........3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26(b)(1) .....................................................................10

The Republic of Ecuador (the "Republic"), by its attorneys, Winston & Strawn LLP, respectfully submits this response ("Response") to Chevron's Application For An Order Pursuant To 28 U.S.C. § 1782 To Conduct Discovery For Use In Foreign Proceedings ("Application").[1]  In support of its Response, the Republic states as follows:

Petitioner seeks discovery "for use in" *both* (1) an environmental litigation against Chevron that has been on active trial in an Ecuadorian court since 2003 (the "*Lago Agrio*" action) *and* (2) an international investor-state arbitration which Chevron has brought against the Republic.   The Republic takes no position on whether discovery under section 1782 is appropriate for use in the *Lago Agrio* action.   Nor does the Republic oppose Chevron's application with respect to certain identified matters that appear to relate, at least on their face, to the subject matter of the international arbitration.   However, the Republic does oppose (1) production of any document or the proffer of any oral testimony as to any communication covered by the attorney-client or other evidentiary privilege; and (2) discovery on any topic *not* reasonably related to the pending international arbitration.

## FACTUAL BACKGROUND

### Texaco Petroleum Company's Operations In Ecuador

From 1964 through June 1992, Texaco Petroleum Company ("TexPet"), then a wholly-owned subsidiary of Texaco, was a partial equity owner (originally 50 percent and later 37.5 percent) of an oil exploration and development concession in the *Oriente* (Eastern) section of Ecuador's Amazonian rain forest (the "Concession").   From the outset, and for the next twenty-five years, TexPet served as the sole manager (entitled "Operator") of the Concession.   In this capacity, TexPet designed, built, and managed all oil exploration, extraction, and production

---

[1]    The Republic responds separately to the request of Ricardo Reis Veiga and Rodrigo Pérez Pallares for discovery pursuant to 28 U.S.C. § 1782 and incorporates that response by reference here.

infrastructure and operations in the Concession area.  In July 1990, TexPet relinquished its role as Operator to a subsidiary of the Republic's state-owned oil company, PetroEcuador.  In June 1992, TexPet's ownership interest in the Concession expired.  *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 338-41 (S.D.N.Y. 2005) ("*ROE I*").[2]

**The *Aguinda* Action in New York**

In 1993, three years after TexPet's twenty-five-year reign as Operator of the Concession had come to an end, a group of indigenous Ecuadorian residents filed a class action complaint against TexPet's parent, Texaco, in the U.S. District Court for the Southern District of New York (the "*Aguinda*" action), alleging that Texaco had polluted private and public lands and streams in Ecuador from 1964 through 1992, and demanding both monetary damages and extensive equitable relief "to compel the cleanup of their community's environmental resources."  *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 473-74 (2d Cir. 2002) ("*Aguinda II*"); *Republic of Ecuador v. ChevronTexaco Corp.*, 499 F. Supp. 2d 452, 456 (S.D.N.Y. 2007) ("*ROE II*").

From 1993 until 2002, the *Aguinda* plaintiffs and Texaco litigated a single issue— whether the environmental litigation should be adjudicated in a federal court of the United States or in an Ecuadorian court.  Texaco moved to dismiss the *Aguinda* complaint on *forum non conveniens* and international comity grounds, arguing that every issue raised in the plaintiffs' complaint should preferably and in the interests of justice be tried in an Ecuadorian court.  In support Texaco submitted numerous affidavits from Ecuadorian law experts who attested that the Ecuadorian court system would provide a fair and adequate forum for the claims the *Aguinda* plaintiffs were asserting.  In 1996, the *Aguinda* court granted Texaco's motion and dismissed *Aguinda* on grounds of *forum non conveniens* and international comity.  *Aguinda v. Texaco, Inc.*,

---

[2]   This dispute has a long history of judicial discovery and decision so that references to judicial opinions constitute authoritative summaries of facts already judicially established.

945 F. Supp. 625, 627 (S.D.N.Y. 1996) (Rakoff, J.).  In 1998, the Second Circuit vacated this dismissal and remanded the case, holding that dismissal would be inappropriate unless Texaco had first consented to Ecuadorian jurisdiction.  *Rev'd sub nom*, *Jota v. Texaco, Inc.,* 157 F.3d 153, 155, 159 (2d Cir. 1998).[3]

On remand Texaco agreed to consent to jurisdiction in Ecuador, and—in an effort to ensure dismissal of the environmental action—expressly committed to "satisfy" any "final judgment" against it rendered by an Ecuadorian court, subject only to its right to defend against extra-territorial enforcement of any such judgment (*i.e.*, enforcement outside of Ecuador) under the specific defenses set forth in New York's Recognition of Foreign Country Money-Judgments Act, N.Y. C.P.L.R. 5304 ("NY Foreign Judgments Act").  *See* Ex. 1 to Declaration of Eric W. Bloom (June 23, 2010) ("Bloom Decl."), Texaco's Reply Mem. in Support of Its Renewed Motions to Dismiss (Jan. 25, 1999) at 21.  On this representation, the District Court once again granted Texaco's motion to dismiss on *forum non conveniens* grounds.  *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534 (S.D.N.Y. 2001).

In 2001, during the pendency of the appeal to the Second Circuit, Chevron Corp. ("Chevron") acquired Texaco by merger.  Chevron (then called "ChevronTexaco Corp.") appeared on the appellate brief endorsing the District Court's dismissal of *Aguinda*.  The Second Circuit affirmed the dismissal on the basis of Texaco's representations, *Aguinda II*, 303 F.3d at 470, thus compelling the *Aguinda* plaintiffs to re-file their environmental claim in an Ecuadorian court.

---

[3]   The *Jota* case, which was consolidated with *Aguinda*, involved the same issues but with a potential class of plaintiffs who lived downstream from the Ecuadorian Amazon in Peru.

**The 1995 Settlement Agreement and Release And the 1998 Final Release Between The Republic, Texaco And Texpet**

While the *Aguinda* action was pending, the Republic, PetroEcuador,[4] and TexPet entered into (1) a 1994 Memorandum of Understanding, superseded by (2) a 1995 Settlement Agreement and Release.  Under the latter agreement, TexPet agreed to perform future remedial work in the Concession area in exchange for an immediate release by the Republic and PetroEcuador of all the Republic's and PetroEcuador's then existing claims against TexPet, Texaco and their respective successors "arising from the Operations of the Consortium, except for those related to the obligations contracted" under the 1995 Settlement Agreement and Release itself.  *ROE I*, 376 F. Supp. 2d at 341-42.  These agreements did not address, and expressly disclaimed addressing, any claims held by third-parties—including the massive environmental claims pending since 1993 in the *Aguinda* action.   Accordingly, TexPet and the Republic recited in the 1994 Memorandum of Understanding that the release contemplated thereby "applied *without prejudice to the rights possibly held by third parties* for the impact caused as a consequence of the operations of the former PetroEcuador-Texaco Consortium."   Ex. 2 to Bloom Decl., Memorandum of Understanding among the Republic, PetroEcuador and TexPet (Dec. 14, 1994) art. VIII (emphasis added).   As a consequence, the 1995 Settlement Agreement and Release neither referenced the pending *Aguinda* action nor included any "hold harmless" or indemnification obligations from the Republic or PetroEcuador to TexPet against any judgment in that action.  *See id.; see also* Ex. 4 to Declaration of Louis Fisher (Dkt. 1) ("Fisher Decl."), May 1995 Settlement Agreement; and Ex. 5 to Fisher Decl., 1998 Final Release.  Indeed, the Ecuadorian Constitution prohibited the Republic from waiving or compromising the rights of its citizens to pursue their own claims for the environmental damage caused by TexPet and Texaco.

---

[4]   The Republic's State-owned oil and gas company, PetroEcuador, is an instrumentality of the State.

*See* Ex. 3 to Bloom Decl., Excerpts from the Foreign Law Declaration of Genaro Eguiguren and Ernesto Albán (Dec. 20, 2006) ¶¶ 97-98, 113, 115.

Subsequent to the execution of the 1998 Final Release, questions arose concerning the adequacy of the remediation work performed by TexPet, leading to several criminal investigations in Ecuador—one of which, naming the seven Ecuadorian officials and the two Texaco representatives who had signed the 1998 Final Release, is currently pending.  Ex. 4 to Bloom Decl., Notification of Investigation (Sept. 8, 2008).

**The *Lago Agrio* Action**

In 2003, following Chevron's successful *forum non conviens* dismissal of the *Aguinda* action in New York, a subset of the *Aguinda* plaintiffs re-filed their action in the Superior Court located in Lago Agrio, Ecuador, against Chevron (the *Lago Agrio* action).  As noted above, Chevron had by then acquired Texaco and its subsidiaries (including TexPet) through merger.  *ROE I,* 376 F. Supp. 2d at 341, 342.

The *Lago Agrio* action has proceeded in Ecuador since 2003, with over 100 judicial site inspections, thousands of test samples, and voluminous reports by both party-appointed and court-appointed experts investigating and analyzing the extent and causes of pollution in the Concession area.  In 2008, the court-appointed damages expert filed a 4,000 page initial report and a follow-up report estimating pollution and personal injury damages in a range of up to US $27.3 billion.  Ex. 5 to Bloom Decl., Summary Report of Expert Examination (Mar. 24, 2008); Ex. 6 to Bloom Decl., Answers to the Plaintiffs' Questions About the Expert Report (Nov. 2008). The damage expert's report did not cover any issues of liability, all of which (including numerous Chevron defenses) are required to be decided in a final judgment.

**The AAA Arbitration And AAA Stay Action**

In June 2004, to eliminate the perceived growing risk it faced of a large judgment in the *Lago Agrio* action, Chevron attempted to bring a separate AAA arbitration proceeding in New York against PetroEcuador (the "AAA Arbitration"), seeking a declaration from an arbitration panel that the *Lago Agrio* action should be dismissed or that PetroEcuador should contractually be obligated to indemnify Chevron for all defense costs and any liability that Chevron had incurred or might thereafter incur in the *Lago Agrio* action. Ex. 7 to Bloom Decl., ChevronTexaco Corp. and Texaco Petroleum Co. Demand for Arbitration (June 2004). PetroEcuador and the Republic filed a petition to stay the AAA Arbitration in New York State court, and Chevron and TexPet removed the case to the District Court for the Southern District of New York (the "AAA Stay Action") where it was assigned to Judge Leonard B. Sand.

The Republic argued before the District Court that the AAA Arbitration should be permanently stayed because the only "arbitration provision" on which Chevron relied was part of a 1965 Joint Operating Agreement ("JOA")—a two-party contract between TexPet and another private U.S. oil company that neither the Republic nor PetroEcuador was ever asked to sign.

In June 2007, following extensive discovery, cross-motions for summary judgment and an evidentiary hearing on applicable Ecuadorian law, the District Court issued an order permanently staying the AAA Arbitration on the ground that the Republic was not contractually bound by the JOA. *ROE II*, 499 F. Supp. 2d at 452. On appeal, the Second Circuit Court of Appeals summarily affirmed. *Republic of Ecuador v. ChevronTexaco Corp.*, 296 F. App'x 124 (2d Cir. 2008). The United States Supreme Court denied *certiorari* on June 29, 2009. *ChevronTexaco Corp. v. Republic of Ecuador*, __ U.S. __, 129 S. Ct. 2862 (2009).

On July 20, 2009 the District Court dismissed Chevron's remaining counterclaims in the AAA Stay Action for lack of subject matter jurisdiction.   *Republic of Ecuador v. ChevronTexaco, Inc.*, No. 04 cv 8378 (Dkt. 241) (S.D.N.Y. July 20, 2009).

**Chevron's Notice Of Investor-State Arbitration Under The UNCITRAL Arbitration Rules In Contravention Of Its Representations To The *Aguinda* Court**

Chevron and TexPet apparently did not believe that the plaintiffs in *Aguinda*—having spent a decade fighting Chevron on U.S. soil—would in fact re-file and start over in Ecuador. Having failed to abort the *Lago Agrio* case via the AAA proceeding, Chevron and TexPet are now trying yet again to shut down the environmental action—this time by way of an international investor-state arbitration.

On September 23, 2009, Chevron and TexPet filed a Notice of Arbitration ("Notice") under the UNCITRAL arbitration rules (the "UNCITRAL arbitration") against the Republic.  Ex. 13 to Fisher Decl., Notice of Arbitration (Sept. 23, 2009).  In the Notice, Chevron has alleged violations by the Republic of the Ecuador-United States Bilateral Investment Treaty ("BIT") in connection with the *Lago Agro* action—despite the fact that no judgment has been rendered in that case.  Having lost the AAA Arbitration, this filing is Chevron's most recent attempt to short circuit the *Lago Agrio* action—which it spent ten years gestating—by the stratagem of international arbitration.  Chevron apparently hopes that a panel of arbitrators will do what no court thus far has been willing to do:  compel the Republic's executive arm to somehow force the *Lago Agrio* court to summarily dismiss the plaintiffs' claims, in a case in which the Republic is not even a party and in which it has no standing.  Notably, Chevron intends for the UNCITRAL tribunal to rule on such matters in the absence of the *Lago Agrio* plaintiffs, who have by now been prosecuting their environmental claims against Chevron for nearly seventeen years.  By seeking an order from the UNCITRAL arbitrators compelling the Republic to interfere in the

*Lago Agrio* action and "inform the court . . . that TexPet, its parent company, affiliates, and principals have been released from all environmental impact arising out of the former Consortium's activities and that Ecuador and PetroEcuador are responsible for any remaining and future remediation work," *id.* at ¶ 76(3), Chevron seeks nothing less than an award compelling the Republic's executive branch to wrest control of the *Lago Agrio* action from its judiciary, thus committing for Chevron's benefit the very judicial interference that Chevron accuses the Republic of committing on the *Lago Agrio* plaintiffs' behalf.

**Chevron's Prior 28 U.S.C. § 1782 Discovery Requests**

As Chevron noted, it has sought discovery in six other venues, Colorado, Georgia, California, New Jersey, Texas and New York.  The Republic did not oppose Chevron's *ex parte* requests in Georgia, California, New Jersey, Texas or New York.

In Colorado, Chevron's *ex parte* 1782 application was initially granted by Judge John L. Kane without prejudice to any opposition by any interested party.  Ex. 8, Hearing on Petition for Subpoenas 8:17-21, *Chevron Corp. v. Stratus Consulting, Inc.*, Case No. 10-cv-00047-JLK, (D. Colo. Mar. 4, 2010).  Judge Kane specifically noted that "interested parties" had indicated their intent to oppose the subpoenas on grounds including the argument that the "BIT proceeding is not a proper basis for granting the petition."  *Id.* at 7:12-17.  Judge Kane allowed opposing parties thirty days from issuance of the subpoenas to file motions to quash.  Ex. 9, Courtroom Minutes, *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-JLK (Dkt. 23) (D. Colo. Mar. 4, 2010).

Due to a conflict of interest, Judge Kane recused himself on April 5, 2010 and the case was reassigned to Magistrate Michael E. Hegarty.  Ex. 10, Order of Recusal, *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047 (Dkt. 35) (D. Colo. Apr. 5 2010).  On April 13, Magistrate Hegarty denied the Republic's Motion to Quash Subpoenas, ruling that Judge Kane's

8

preliminary conclusion of relevancy—made in the absence of any counterargument by the Republic—had already decided the issue and had become "law of the case."  *See* Ex. 11, Order at 6, *Chevron Corp. v. Stratus Consulting, Inc.* No. 10-cv-00047-MSK-MEH (Dkt. 50) (D. Colo. Apr. 13, 2010).  The Magistrate found that the Republic's Motion to Quash failed to satisfy the more exacting standards of a motion for reconsideration.

**Chevron's *Ex Parte* Petition To This Court**

Chevron filed the instant Ex Parte Petition in this Court on June 8, 2010, seeking discovery from Norman Nelson Alberto Wray Espinosa ("Wray"), purportedly for use in the *Lago Agrio* action and the UNCITRAL arbitration.

**Dr. Wray's Role As Counsel To The Republic**

Dr. Wray is a well-respected Ecuadorian lawyer who served as a Judge on Ecuador's Supreme Court and who currently maintains a private practice in Ecuador, serving as "Of Counsel" to the Washington D.C. office of U.S. law firm Foley Hoag LLP.  Throughout the time period relevant to Chevron's discovery application, Dr. Wray provided professional legal advice to the Office of the Republic's State Attorney General ("PGE"), including appearing as counsel of record for the Republic in various international arbitrations.  Currently, Dr. Wray is counsel to the Republic in two international arbitrations, *Murphy Exploration and Production Company International v. Republic of Ecuador* (ICSID Case No. ARB/08/4) and *Repsol YPF Ecuador, S.A. and others v. Republic of Ecuador and Empresa Estatal Petróleos del Ecuador (PetroEcuador)* (ICSID Case No. ARB/08/10).  In addition, Dr. Wray is a legal advisor to the Republic on discrete matters related to the UNCITRAL arbitration underlying the present action, and has assisted in drafting pleadings covering Ecuadorian law issues.

9

**ARGUMENT**

**I.      The Republic Has Standing To Oppose Chevron's Requested Discovery**

The Republic—as a party to the UNCITRAL arbitration in aid of which Chevron seeks discovery—has standing to oppose Chevron's Petition.  *See In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) ("'[A] party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of . . . § 1782.'" (quoting *In re Letter Rogatory from the Justice Court*, 523 F.2d 562, 564 (6th Cir. 1975))); *see also In re Letter of Request From Crown Prosecution Service*, 870 F.2d 686, 689 (D.C. Cir. 1989) (A person "against whom information obtained under section 1782 may be used[] has standing to assert that, to his detriment, the authority for which the section provides is being abused").   Here, Chevron seeks the deposition of and documents from Dr. Wray purportedly in aid of the UNCITRAL arbitration Chevron has initiated against the Republic. Application at 1-2.  Accordingly, the Republic has standing to oppose Chevron's efforts to obtain this discovery.

**II.     The Republic Does *Not* Oppose Discovery Of Non-Privileged Matters From Dr. Wray, So Long As Those Matters Are Reasonably Calculated To Yield Evidence Relevant To One Of The Foreign Proceedings**

As noted above, the Republic takes no position as to the appropriateness of any discovery purportedly related to the *Lago Agrio* action.   If the *Lago Agrio* plaintiffs agree to such discovery, or if this Court finds that the requested discovery seeks (non-privileged) evidence relevant to that proceeding, the Republic has no objection to discovery proceeding on those grounds.

However, to the extent Chevron seeks discovery in aid of the UNCITRAL arbitration, the Republic asks this Court to examine the proposed discovery categories and determine whether each category is reasonably calculated to produce evidence that is "relevant" to the arbitration.

10

As admitted by Chevron, only "*relevant* evidence obtained through this Application can be used in the Treaty Arbitration."  Mem. in Support at 19 (citing UNCITRAL Arbitration Rules, art. 24, *available at* http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules/arb-rules.pdf).[5]  Thus, for this Court to order Section 1782 discovery in aid of the UNCITRAL arbitration, Chevron must demonstrate that the information it seeks from Dr. Wray is relevant to that proceeding.

The information that Chevron now seeks from Dr. Wray falls into four categories, two of which the Republic does *not* oppose as lacking relevance.

<u>First</u>, Chevron seeks to depose Dr. Wray regarding his knowledge of the Martha Escobar chain of emails.[6]  The Republic does not object to deposition of Dr. Wray regarding the email communication because (1) the email in question was sent by Dra. Escobar, not only to Dr. Wray, the Republic's counsel, but also to third parties.  Thus any privilege that would ordinarily attach to the email was waived; *and* (2) Chevron claims that the email may support the allegation in its Notice that the Republic is "colluding" with the Lago Agrio plaintiffs.  Mem. in Support at 2-4.  The Republic merely notes that communications between the PGE (Dra. Escobar) and

---

[5]   *See also, Fleischmann v. McDonald's Corp. (In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Braz.)*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006) (finding that 28 U.S.C. § 1782's "for use in a proceeding in a foreign or international tribunal" requirement "mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action"); *Kang v. Noro-Moseley Partners*, 246 Fed. Appx. 662, 2007 WL 2478579 (11th Cir. Sept. 4, 2007) (upholding trial court's denial of discovery under 28 U.S.C. § 1782 because the material was irrelevant to the foreign proceeding); *In re Application Pursuant to 28 U.S.C. 1782 for an Order Permitting Bayer Ag*, 146 F.3d 188, 195 (3d Cir. 1998) ("district courts should treat *relevant* discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application" (emphasis added)); *In re Kulzer*, 2009 U.S. Dist. LEXIS 29771, 15-16 (N.D. Ind. Apr. 8, 2009) (quashing subpoenas issued under 28 U.S.C. § 1782 because they sought "to use th[e] Court's discovery procedures to undertake a fishing expedition" for information not relevant to the foreign proceeding at issue);  *In re Wilson*, 2009 U.S. Dist. LEXIS 42046, *6-7 (D. Colo. Apr. 30, 2009) (Federal Rule of Civil Procedure 45 governs documents and depositions produced from non-parties pursuant to 28 U.S.C. § 1782 and, as a result, discovery requests must conform to the relevancy requirements set forth in Rule 26); *In re 28 U.S.C. § 1782*, 249 F.R.D. 96, 106-107 (S.D.N.Y. 2008) (applying standard relevancy analysis to determine appropriateness of discovery under 28 U.S.C. § 1782).

[6]   Parenthetically, the Republic notes that Chevron has been aware of this email chain since 2006 and, without objection from the Republic, Chevron deposed Ms. Escobar regarding their contents at that time.  Ms. Escobar was not—as improperly asserted by Chevron—Deputy Attorney General of Ecuador (Mem. in Support at 3), but rather a line attorney working for the Office of the Attorney General, which has jurisdiction over civil matters only.

counsel for the *Lago Agrio* plaintiffs (Dr. Wray) do not constitute "collusion" with the plaintiffs, any more than the Republic's communications with Chevron constitute its "collusion" with Chevron.   Here, the subject email occurred *after* Chevron had initiated the AAA arbitration against the Republic, and the PGE (representing the Republic as counsel) had every right to determine a course of action to defend itself.   The third party that was on the email chain was a party who was also adverse to Chevron and with whom the Republic surely had a common interest.   There is simply nothing wrong with the PGE attorney (Dra. Escobar) considering all her client's (the Republic's) options, including examining whether the contract her client had allegedly breached (the 1995 Settlement Agreement and Release) had been procured by fraud. The inquiry of Dr. Wray should therefore be limited to determining whether there were any inappropriate communications by either the PGE of the *Lago Agrio* plaintiffs, on the one hand, <u>with the *Lago Agrio* court</u>, not communications between a line attorney for the PGE and an attorney for the *Lago Agrio* plaintiffs.[7]

---

[7]     Indeed, if Chevron had wished to include a clause prohibiting the Republic or PEC from communicating with or assisting any other plaintiffs in suits against Chevron, surely Chevron's sophisticated legal department could have crafted appropriate language for inclusion in the Settlement Agreement.   *See, e.g.*, *Earnings Performance Group, Inc. v. Quigley*, 124 Fed. Appx. 350, 352 (6th Cir. 2005) (settlement provided that defendants "agree not to assist or work with any third party regarding any claim or dispute between said third party and [plaintiff]"); *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1133 (6th Cir. 1990) (settlement provided that former employee "agree[s] not to assist in any litigation or investigation against the corporation, except as required by law"); *Quad/Graphics Inc. v. Fass*, 724 F.2d 1230, 1231 (7th Cir. 1983) (settlement included clause prohibiting settling defendant from voluntarily assisting a non-settling defendant in the course of remaining litigation); *Grand River Enter. Six Nations Ltd. v. Pryor*, No. 02 Civ 5068, 2006 WL 1517603, at *7 (S.D.N.Y. 2006) (agreement provided that party would "not directly or indirectly assist or encourage any challenge" to the agreement by "any other person"); *Raybon v. Cont'l Tire N. Am.*, No. 040274, 2005 WL 1278466, at *1 (S.D. Ala. 2005) (former employee's separation agreement provided that employee "agrees not to assist any third party in pursuing a lawsuit . . . or any other action against" former employer); *The Kellogg Co. v. Sabhlok*, No. 5:04-CV-598, 2005 WL 2297446, at *3 (W.D. Mich. 2005) (agreement provided that former employee would "not lodge, assist nor participate in any formal or informal charge or complaint in any court...arising out of or related to Employee's Claims or Employee's employment"); *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1028 n.4 (E.D. Cal. 2002) (agreement provided that plaintiff "agrees not to aid the prosecution of any pending claim against Defendants by [third party]..., whether asserted in [specified actions], or in future claims which may be asserted by...[third party] arising out of the matters which are the subject of this Settlement Agreement"); *Am. Special Risk Ins. Co. v. Greyhound Dial Corp.*, No. 90Civ2066, 1996 WL 551659, at *81 (S.D.N.Y. 1996) (settlement included provision that party would "not cooperate in any manner with any party conducting or proposing to conduct litigation against" specified parties); *In re Gulf Beach Dev. Corp.*, 48 B.R. 40, 42 (M.D. Fl. 1985) (settlement between debtor and bank included provision stating that

Second, Chevron desires to question Alberto Wray about an alleged "*quid pro quo*" between the Lago Agrio plaintiffs and the Republic.  Mem. in Support at 3-4.  Chevron alleges without any documentary or testimonial support, that the Lago Agrio plaintiffs had a compact with the Government (1) that they would not sue the Republic and (2) that the Republic would receive ninety percent of any award, and as a *quid pro quo* the Republic would "direct the outcome of the Lago Agrio Litigation or coerce a settlement."  *Id*.  Chevron's current allegations regarding this supposed compact run counter to Texaco's previous press release questioning the ability of the *Lago Agrio* plaintiffs' attorneys' ability to waive the right to collect money from the Republic.  In any event, the Republic agrees that this area of inquiry should not raise any issues of privilege and the Republic will not object on this basis.

## III.    The Republic Does Object To Discovery Of Dr. Wray Regarding Matters *Not* Reasonably Calculated To Yield Evidence Relevant To the UNCITRAL Arbitration.

The Republic *does* object to Chevron's request to take discovery in aid of the UNCITRAL arbitration to the extent that Chevron intends to question Dr. Wray on topics related to "the fraudulent creation and submission of the Lago Agrio plaintiffs' expert reports" (Mem. in Support at 16) or any "other improprieties with judicial inspection reports in Lago Agrio," including use of the Selva Viva laboratory (Mem. in Support at 11).  Chevron's application fails to untangle which information it seeks from Dr. Wray in regard to which foreign proceedings. As a result, it is unclear from Chevron's Application whether it seeks this discovery in aid of the

---

debtor "agree[s] not to directly or indirectly assist any other Defendant in the above-referenced litigation...unless (they) are acting under the direction of the Court...").

In some contexts courts have even refused to enforce such non-assistance provisions. *See, e.g.*, *EEOC v. Astra USA, Inc.*, 94 F.3d 738, 745 (1st Cir. 1996) (affirming district court injunction against non-assistance provision in settlement agreement—which prohibited settling employees from assisting other employees who file charges with the EEOC—because provision violated public policy); *see also EEOC v. Morgan Stanley & Co.*, No. 01CIV8421, 2002 WL 31108179, at *1-2  (S.D.N.Y. 2002) (holding that non-assistance clause directed at EEOC—requiring employee to agree to "not offer assistance or testimony in any action against [Morgan Stanley]"—violates public policy).

UNCITRAL arbitration, or if it intends to use it only in aid of the *Lago Agrio* action.  *See* Mem. of Support at 16 (explaining the relevancy of such discovery to the *Lago Agrio* litigation but failing to provide such an explanation of relevancy to the investor-state arbitration or in the criminal indictments).

As noted above, the Republic takes no position regarding the appropriateness of discovery related to the *Lago Agrio* action, but to the extent that Chevron seeks such information for use in the UNCITRAL arbitration, this Court should not allow it.  Chevron provides no explanation of the relevancy to the UNCITRAL arbitration of its accusations about expert reports submitted by the *Lago Agrio* plaintiffs.  There is no evidence—indeed, not even an allegation— that the Republic had any involvement in Dr. Calmbacher's court submission, or that of any other expert retained by the *Lago Agrio* plaintiffs.  Similarly, there is no evidence or allegation that the Republic had any involvement in the use of the Selva Viva laboratory, cited by Chevron as demonstrating a connection between Dr. Wray and "improprieties with judicial inspection reports."  Mem. in Support at 11.  Thus, any attempt to question Dr. Wray on these topics in aid of the UNCITRAL arbitration would be exactly the type of fishing expedition the federal rules prohibit.

Even assuming *arguendo* that evidence exists supporting an inference that the *Lago Agrio* plaintiffs fraudulently submitted expert reports to the *Lago Agrio* court, Chevron fails to establish that this would have any bearing on any UNCITRAL tribunal's award.  Chevron seeks through its BIT claims to transfer its liability in *Lago Agrio* to the Republic, but it has provided no support for the presumption that the Republic can somehow be held internationally responsible for the acts of a private party to the litigation—acts in which it did not participate. Even under the most expansive interpretation of the BIT, Chevron cannot claim that the Republic

must act as guarantor of the conduct of every independent actor in the litigation process.  This Court should not permit discovery related to allegations that, even if true, would have no impact on the foreign proceeding at issue.

## IV.   The Republic Objects To Any Attempt To Discover Privileged Information

To be clear, the Republic objects to any effort by Chevron to obtain through discovery information protected by the attorney-client or work product privilege as it relates to work performed for or for the benefit of the Republic.  As discussed above, Dr. Wray has acted and currently acts as counsel to the Republic in a number of matters, including the BIT arbitration underlying Chevron's request.   The Republic thus objects to the production of privileged documents that may be in Dr. Wray's care, custody or control that relate to the BIT arbitration for which he has provided legal advice.  Should Dr. Wray be deposed pursuant to any subpoena issued by this Court, the Republic intends to attend that deposition to protect its privileges.[8] Additionally, the Republic reserves the right to question Dr. Wray during that deposition and to review any documents intended to be produced to ensure that no document is produced that is covered by any applicable privilege that the Republic has the right to assert.

Notably, Chevron contends that it does not seek privileged information from Dr. Wray,[9] so it should have no objection to the Republic's presence at any such deposition.

## V.   Chevron's Prior Section 1782 Applications Provide Little Or No Guidance With Respect to the Republic's Limited Objections

Chevron suggests that because four other courts have recently granted its Section 1782 Applications for discovery, this Court should follow suit.  Mem. in Support at 1, 21.  As a

---

[8]   Dr. Wray has obtained counsel for this matter.  To the extent he is required to produce documents the Republic expects that that production will be in accordance with United States practice on privilege including usage of a privilege log for all privileged documents.

[9]   *See, e.g.,* Mem. in Support at 4.

preliminary matter, however, the instant Application is unique because Chevron has never before sought discovery from an attorney for the Republic.

Furthermore and to be clear, the Republic never participated in nor otherwise raised any objections in any of the previous § 1782 actions, save one.  And in the *only* instance in which the Republic did object to Chevron's Application, the Republic's late involvement in the proceeding and the transfer of the case between judges in the district resulted in a decision on relevancy based solely on Chevron's *ex parte* application for discovery.  In that case, Judge Kane (of the U.S. District Court for the District of Colorado) elected to grant Chevron's *ex parte* application and issue the requested subpoenas, but he did so without prejudice to rights of any interested third parties to raise objections <u>after</u> the issuance of the subpoena.  He did so at Chevron's request to avoid what may have been *two* sets of objections—one in response to the Application for the Issuance of a Subpoena and the second in response to the issuance of the subpoena itself—which could have unnecessarily delayed discovery in that case.  Ex. 8, Tr. Of H'rg in Co at 3:25-4:11.  The Magistrate who was reassigned the case after Judge Kane recused himself misunderstood the procedural posture set up by Judge Kane; he thus determined that the Republic's Motion to Quash was "in essence, a motion for reconsideration of Judge Kane's determination" of relevancy, even though Judge Kane's ruling was predicated on Chevron's *ex parte* application and was intended only to bring the issues to the court in an efficient manner. Ex. 11, Order at 3-5, *Chevron Corp. v. Stratus Consulting, Inc.* No. 10-cv-00047-MSK-MEH (D. Colo. Apr. 13, 2010).  Had a proper relevancy analysis been conducted in Colorado, that court should have concluded, as should this Court based on the Republic's showing above, that any inquiry into misconduct by the *Lago Agrio* plaintiffs *unrelated to the Republic* cannot be taken in aid of the BIT arbitration.

## CONCLUSION

The Republic has not opposed Chevron's § 1782 Applications as a matter of course. However, Chevron has chosen in this instance to seek discovery (1) from one of the Republic's own counsel (2) on matters that have no relevance to the UNCITRAL arbitration. WHEREFORE, the Republic respectfully requests that this Court enter an Order: denying in relevant part Chevron's request for subpoenas issued pursuant to Chevron's Application for an Order Pursuant to 28 U.S.C. § 1782 To Conduct Discovery for use in Foreign Proceedings, enjoining Chevron from pursuing such discovery, and granting any other relief this Court deems appropriate.

Dated: June 23, 2010

Respectfully submitted,

/s/ Eric W. Bloom

| | |
|---|---|
| C. MacNeil Mitchell | Eric W. Bloom (Bar No. 417819) |
| WINSTON & STRAWN LLP | Lauren M. Butcher (Bar No. 494748) |
| 200 Park Avenue | WINSTON & STRAWN LLP |
| New York, New York 10166 | 1700 K Street, N.W. |
| Phone:   (212) 294-6700 | Washington, DC 20006 |
| Fax:      (212) 294-4700 | Phone:   (202) 282-5000 |
| E-mail:  cmitchel@winston.com | Fax:      (202) 282-5100 |
| | E-mail:  ebloom@winston.com |

Attorneys for the Republic of Ecuador

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2010, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following e-

mail addresses:

Thomas F. Cullen
tfcullen@jonesday.com

Thomas G. Hungar
thungar@gibsondunn.com

Louis K. Fisher
lkfisher@jonesday.com

Susan L. Burke
sburke@burkeoneil.com

William Francis Coffield, IV
WCoffield@coffieldlawgroup.com

In addition, I hereby certify that on June 23, 2010 I will send notice of the foregoing via

other means to the following attorney of record:

Luke Andrew Sobota
WILMER, CUTLER & PICKERING
2445 M Street, NW
Washington, DC 20037
(202) 663-6897


/s/ Eric W. Bloom

Eric W. Bloom
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, DC  20006
Phone:  (202) 282-5000
Fax:      (202) 282-5100
E-mail:  ebloom@winston.com
Attorney for the Republic of Ecuador