**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

In re Application of

RICARDO REIS VEIGA, and

RODRIGO PÉREZ PALLARES,

           Applicants,

To Issue a Subpoena for the Taking of a
Deposition and the Production of Documents
for Use in a Foreign Proceeding.

Misc. Action No. 10-370 (CKK) (DAR)

In re Application of

CHEVRON CORPORATION,

           Applicant,

To Issue a Subpoena for the Taking of a
Deposition and the Production of
Documents.

Misc. Action No. 10-371 (CKK) (DAR)

**MEMORANDUM OPINION**
(October 20, 2010)

      Before the Court are applications by Chevron Corporation ("Chevron") and two of its

attorneys, Rodrigo Pérez Pallares ("Pérez") and Ricardo Reis Veiga ("Veiga") (collectively,

"Applicants") pursuant to 28 U.S.C. § 1782(a) for the issuance of subpoenas requiring

Respondent Alberto Wray Espinosa ("Wray") to produce documents and appear at a deposition

in Washington, D.C. *See* 10 Misc. 370, Docket No. [1] (Pérez-Veiga Application); 10 Misc. 371,

Docket No. [1] (Chevron Application). Intervening as interested parties are the Republic of

Ecuador (the "Republic") and the plaintiffs in an ongoing litigation against Chevron in Lago

Agrio, Ecuador (the "Lago Agrio Plaintiffs") (collectively, the "Interested Parties").

Notwithstanding the parties' all-too-frequent detours, these proceedings are limited to the narrow

question of whether the Applicants have properly invoked the statutory relief contemplated by §

1782(a) – *i.e.*, whether discovery should be allowed in this District for potential use in

proceedings abroad.[1]  For the reasons set forth below, the Court shall GRANT both the Pérez-

Veiga Application and the Chevron Application, subject to certain limitations and conditions.

## I.  PRELIMINARY MATTERS

Preliminarily, the parties have raised various issues concerning the submissions in this

action, none of which requires extensive discussion.

### A.      *The Republic's Motion to Strike*

First, the Republic moves to strike what it describes as "new evidence" presented to this

Court by Chevron in the course of briefing in this matter – for the most part, selected excerpts of

outtakes from a documentary about the ongoing litigation against Chevron in Lago Agrio – or,

alternatively, for leave to file a sur-reply.  *See* 10 Misc. 370, Docket No. [50]; 10 Misc. 371,

Docket No. [65].  The Republic's objections are two-fold: first, that Chevron failed to present the

evidence in the proceedings before the Hon. Magistrate Judge Deborah A. Robinson; and,

second, that Chevron effectively deprived the Republic of an opportunity to respond by

---

[1]  The Court is aware that the parties have engaged in a protracted and heated dispute
spanning multiple fora.  Nevertheless, the parties' voluminous submissions often devolve into a
needless presentation into the merits of claims before foreign tribunals, proceedings before other
district courts, and myriad other tangential and immaterial concerns, an approach that has
needlessly complicated and delayed the disposition of the applications now before the Court.
The parties are cautioned that future pleadings, if any, should be tailored to address the discrete
issues presented, with any exhibits properly edited to direct the Court's attention to the relevant
portions thereof.

submitting such evidence with a reply brief.

The Republic concedes, however, that this Court retains the discretion to accept and consider the evidence submitted by Chevron. *See id.*; *see also* Local Rule LCvR 72.3(c) ("A district judge may make a determination based solely on the record developed before the magistrate judge, or may . . . receive further evidence"). Nor can the Republic credibly dispute that Chevron only came into possession of the outtakes at issue a short period before the Magistrate Judge last held a hearing in this action. *See* 3d Supp. Fisher Decl., 10 Misc. 371, Docket No. [62-1], ¶ 2. Instead, the Republic dedicates the lion's share of its moving papers to the substance of the outtakes themselves, providing its alternative interpretations with specific and detailed citations to the relevant transcripts. Indeed, the Republic encourages the Court to review the entirety of the evidence submitted by Chevron to assess the accuracy of Chevron's representations. To the extent it is even required, the Republic has already taken for itself a full and fair opportunity to respond to the evidence at issue. Accordingly, the Republic's Motion is DENIED; in an exercise of its discretion, the Court has reviewed the evidence submitted by Chevron, as well as the Republic's rebuttal thereto, and will cite to portions thereof where helpful to the Court's disposition of the Applications. However, the Court notes that its consideration of the evidence does not affect the ultimate outcome of these proceedings; even absent the outtakes, Chevron has made a sufficiently particularized *prima facie* showing to justify the invocation of § 1782(a).

B.     *The Lago Agrio Plaintiffs' Motion to Supplement the Record*

Second, the Lago Agrio Plaintiffs move to supplement the record to correct an allegedly erroneous and incomplete translation submitted by Applicants. *See* 10 Misc. 370, Docket No.

[57]; 10 Misc. 371, Docket No. [66].  Although the Court shall GRANT the Motion, the

difference between the two submissions does not affect the Court's disposition, and the Court

makes no finding as to the accuracy of the parties' respective submissions.

C.      *Chevron's Motion to File Corrected Submissions*

Finally, Chevron has moved to file a corrected brief and exhibit omitting references to

information that was apparently sealed by another district court following Chevron's initial

filing.  *See* 10 Misc. 371, Docket No. [64].  The Court shall GRANT the Motion, which as of the

date of this Opinion remains unopposed.

## II.  BACKGROUND[2]

Applicants seek discovery from Wray in connection with a lawsuit pending against

Chevron in Lago Agrio, Ecuador (the "Lago Agrio Litigation"), criminal proceedings

commenced against Pérez and Veiga in Ecuador (the "Criminal Proceedings"), and an arbitration

commenced by Chevron against the Republic under the Bilateral Investment Treaty between

---

[2]  While the Court has reviewed all of the parties' submissions, including the attachments and exhibits thereto, the report and recommendation and orders of Magistrate Judge Robinson, the transcripts of prior proceedings, and the record as a whole, the Court will only address the factual and procedural background necessary to dispose of the narrow issues presented.  Further factual details can be found in the parties' submissions on the public docket, as well as in the opinions issued in related litigation in other jurisdictions.  *See, e.g.*, *In re Chevron Corp.*, No. 1:10-MI-00076-TWT-GGB (N.D. Ga.); *Chevron Corp. v. Stratus Consulting, Inc.*, No. 1:10-cv-00047-MSK-MEH (D. Colo.); *In re Application of Chevron Corp.*, No. 4:10-mc-134 (S.D. Tex.); *In re Application of Chevron Corp.*, Nos. M-19-111, 10 MC 00001 (LAK) (S.D.N.Y.); *In re Application of Chevron Corp.*, No. 2:10-cv-02675 (SRC) (D.N.J.); *In re Chevron*, No. 10cv1146-IEG (WMc) (S.D. Cal.); *In re Application of Chevron Corp.*, No. 3:10-cv-00686 (M.D. Tenn.); *Chevron Corp. v. Champ*, Nos. 1:10mc27, 1:10mc28 (W.D.N.C.); *In re Chevron Corp.*, Nos. 10-MC-21JH/LFG, 10-MC-22 JH/LFG (D.N.M.).  Additionally, although the applications before the Court are sharply contested, there is surprisingly little disagreement on the underlying facts, obviating in large part the need to make specific references to the record.  As such, the Court will reference the record primarily when highlighting points of disagreement and contention.

Ecuador and the United States (the "BIT Arbitration"). The nature of those proceedings may be briefly summarized as follows:

- **THE LAGO AGRIO LITIGATION.** Commenced in 2003, the Lago Agrio Litigation involves claims that Chevron, as the purported successor-in-interest to Texaco Petroleum Company ("Texaco"), is liable for Texaco's alleged pollution of the Ecuadorian Amazon Rainforest over the course of several decades while engaging in oil extraction in the region. In 1995, Texaco entered into a settlement agreement with the Republic and its state-owned oil company, pursuant to which Texaco agreed to engage in certain environmental remediation efforts in exchange for a release of claims (the "Settlement Agreement"). In 1998, the aforementioned parties entered into a final release (the "Release"). As part of its defense in the Lago Agrio Litigation, Chevron relies upon the Settlement Agreement and Release, which Chevron contends operate to bar the Lago Agrio Plaintiffs' claims. *See* Fisher Decl. Ex. 66 (Chevron's Answer to Compl.), 10 Misc. 371, Docket Nos. [29-78] and [29-79].[3]

- **THE CRIMINAL PROCEEDINGS.** Around the same time that the Lago Agrio Litigation was initiated, a criminal complaint was filed against two of Chevron's lawyers – namely, Applicants Pérez and Veiga. Pérez and Veiga are essentially accused of falsifying or misrepresenting the nature of Texaco's environmental remediation efforts in connection with the Settlement Agreement and Release and violating environmental laws. *See* Stewart Decl. Ex. 10 (Dictamen Fiscal Acusatorio), 10 Misc. 370, Docket No. [1-12]. The charging documents appear to reference, among other things, expert reports conducted in connection with the Lago Agrio Litigation. As part of their defense, Pérez and Veiga assert that the Criminal Proceedings were improperly brought at the behest of the Republic and the Lago Agrio Plaintiffs for purposes of undermining the validity of the Settlement Agreement and Release and pressuring Chevron to settle the Lago Agrio Litigation.

- **THE BIT ARBITRATION.** Chevron and the Republic are also parties to an arbitration commenced in 2009 under the Bilateral Investment Treaty between the United States and Ecuador, an arbitration working under the United Nations Commission on International Trade Law ("UNCITRAL") rules and procedures. In the BIT Arbitration, Chevron asserts that the Republic has abused the criminal

---

[3] For its part, the Republic maintains that the Settlement Agreement and Release merely prevent the Republic from suing Chevron, without prejudice to the rights of third parties such as the Lago Agrio Plaintiffs. The actual scope of the Settlement Agreement and Release is immaterial to the resolution of the Applications; it is enough that Chevron has raised the defense in the Lago Agrio Litigation.

justice system by issuing frivolous and unfounded indictments against Pérez and Veiga and has colluded with the Lago Agrio Plaintiffs to undermine the Settlement Agreement and Release in an attempt to secure an illegitimate financial windfall from Chevron. *See* Fisher Decl. Ex. 13 (Notice of Arbitration), 10 Misc. 371, Docket No. [1-3], ¶¶ 30-65.

In connection with these proceedings, Chevron previously deposed Dr. Charles W. Calmbacher, Ph.D ("Calmbacher"), formerly a technical expert for the Lago Agrio Plaintiffs. *See* Fisher Decl., Ex. 24 (Calmbacher Dep.), 10 Misc. 371, Docket No. [29-26]. Calmbacher testified that two expert reports that were filed in his name in the Lago Agrio Litigation purport to reach conclusions – namely, that there was harmful environmental contamination – that he did not actually reach (the "Calmbacher Reports"). *Id.* at 112:1-117:20. Calmbacher further testified that the reports at issue were, like other expert reports created during the course of the litigation, prepared in Wray's law offices in Ecuador. *Id.* at 61:19-61:23, 69:4-69:19, 72:25-73:2, 93:23-94:1. At the time, Wray served as the Lago Agrio Plaintiffs' lead counsel in Ecuador, a role he held until approximately 2006.[4] *See* Burke Decl. Ex. G (Wray Aff.), 10 Misc. 370, Docket No. [13-2], ¶ 4. The Lago Agrio Plaintiffs, for their part, paint Calmbacher as a "disgruntled" former expert, and characterize his memory of events as questionable.

In light of Wray's alleged connection with the preparation of the Calmbacher Reports, Applicants seek documents and testimony relating to the following eight topics:[5]

---

[4] In the same time period, Wray was also purportedly providing professional legal advice to the Republic, including appearing as counsel of record for the Republic in various international arbitrations.

[5] Because the requests in the Pérez-Veiga Application and the Chevron Application are coterminous, as are the requests for documents and the requests for testimony within the respective applications, *see* 10 Misc. 370, Docket No. [1] (Pérez-Veiga Application), Annex A; 10 Misc. 371, Docket No. [1] (Chevron Application), Annex A, the Court shall refer to the topics in general terms for ease of discussion. The Court's restatement should not be interpreted to

1.      The preparation and filing of the Calmbacher Reports;

2.      Communications with Calmbacher relating to his work with respect to the Lago Agrio Litigation;

3.      The preparation of any plaintiff expert's work relating to the Lago Agrio Litigation;

4.      Communications between any plaintiff-affiliated person and any plaintiff expert relating to any plaintiff expert's work relating to the Lago Agrio Litigation;

5.      Communications related to any factual representations, analyses, or conclusions in any plaintiff expert's work relating to the Lago Agrio Litigation;

6.      Communications relating to the formation, organization, or activities of Selva Viva;

7.      Communications relating to the criminal investigations or criminal proceedings; and

8.      Communications between plaintiff-affiliated persons and the Government of Ecuador relating to the Settlement and Final Release or the Lago Agrio Litigation.

### III.  LEGAL STANDARD

Pursuant to § 1782(a), district courts are authorized to order discovery in the United States for use in foreign proceedings in certain circumstances.  The relevant inquiry proceeds in two stages: at the first stage, the district court considers whether it has the authority to grant the application; thereafter, the court considers whether it should exercise its discretion to do so.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004); *see also Four Pillars Enters. Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) ("Congress gave the

---

displace the terms and phrasing of the subpoenas themselves, which shall govern except as otherwise expressly limited.

federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782."). In the end, the issuance of an appropriate order is left to the sound discretion of the district court; the court may refuse to issue an order or it may impose conditions on discovery it deems desirable. *In re Application of Bayer AG*, 146 F.3d 188, 192 (3d Cir. 1998).

A district court has the authority to grant an application when three conditions are met: (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person. 28 U.S.C. § 1782(a). If the applicant satisfies these prerequisites, the district court then turns to the four factors articulated by the Supreme Court to aid district courts in exercising their discretion:

1. Whether the person from whom discovery is sought is a participant in the foreign proceeding;

2. The nature of the foreign tribunal and the character of the proceedings;

3. Whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and

4. Whether the discovery sought is unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264-65. In engaging in this analysis, courts should look to the statute's twin aims: *i.e.*, to provide fair and efficient assistance to participants in international litigation and to encourage other countries to provide similar assistance. *See In re Application of Euromepa S.A.*, 51 F.3d 1095, 1097 (2d Cir. 1995).

## IV.  DISCUSSION

Consistent with the framework established by the Supreme Court, the Court shall first consider whether it has the statutory authority to grant the relief requested by Applicants; thereafter, the Court will determine whether to exercise its discretion to do so.

### A.    The Statutory Prerequisites

Of the three statutory prerequisites, only one – whether Applicants seek the requested discovery for use in a proceeding in a foreign or international tribunal – is actually contested. Wray stipulates that he is found within this District, *see* Tr. of July 22, 2010 Status Hr'g, 10 Misc. 370, Docket No. [37], at 41:16-44:25, 52:20-52:25, and Applicants are all "interested persons" within the meaning of § 1782(a) as litigants in the proceedings at issue.  *Intel*, 542 U.S. at 256.  The Court therefore turns to the only disputed element.

To make use of § 1782(a), an applicant must show that it seeks discovery "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  The questions raised here are two: whether the discovery sought by Applicants is "for use" in the proceedings at issue; and whether the BIT Arbitration qualifies as a foreign or international "tribunal" under the statute.  Both are answered in the affirmative.

### 1.    For Use

Although the discovery sought must be "for use" in a foreign proceeding, district courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding.  *See Bayer*, 146 F.3d at 193; *In re Application of Grupo Qumma, S.A., de C.V.*, 2005 WL 937486, at *2 (S.D.N.Y. Apr. 22, 2005)*.  In fact, courts should generally refrain from doing so, and leave it to the foreign tribunal to decide what use it wants to make of the

evidence obtained.  *See John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136-37 (3d Cir. 1985).

That is not to say that the district court is free to accept an applicant's request on blind faith; but

the burden imposed upon an applicant is *de minimis*.  *See In re Application of Republic of

Ecuador*, 2010 WL 4027740, at *4 (E.D. Cal. Oct. 14, 2010) (concluding that applicant had

made a "prima facie showing that the information it seeks . . . has, generally speaking, some

relevance" to the foreign proceeding); *In re Application of Sveaas*, 249 F.R.D. 96, 106-07

(S.D.N.Y. 2008) (where conflicting statements result in a "factual dispute regarding the relevance

of the discovery sought," it is inappropriate to deny discovery); *Grupo Qumma*, 2005 WL

937486, at *2 (it is sufficient "use" if the applicant will present the evidence sought to the foreign

tribunal with a request that it be considered; the statute does not require the actual receipt of

materials into evidence).

     The Interested Parties cannot credibly dispute that the Applicants seek discovery with the

intention of submitting it for consideration in the Lago Agrio Litigation, the Criminal

Proceedings, and the BIT Arbitration.[6]  Their resistence, at its core, reduces to a quarrel as to the

Applicants' theory of those proceedings and the underlying validity of the claims and defenses

asserted therein, supported with little more than alternative interpretations of the evidence relied

upon by Applicants.  These objections are better left for the foreign tribunals to resolve.  Surely,

in enacting § 1782(a), Congress did not intend for district courts to assess the weight of

individual pieces of evidence in excruciating detail, and then attempt to discern the precise nexus

---

[6]  For his part, Wray has agreed to be deposed on each of the topics identified in the
Applications, and only claims the deposition should be held in Ecuador, *see* Burke Decl. Ex. G
(Wray Aff.), 10 Misc. 370, Docket No. [13-2], ¶ 11, a position that essentially concedes that the
information sought by Applicants is discoverable.

between such evidence and the claims and defenses raised in the foreign proceeding.[7]  Indeed,

such an effort would run counter to the salutary statutory objective of providing fair and efficient

assistance to participants in international litigation.  *See Euromepa*, 51 F.3d at 1097; *see also In re Application of Imanagement Servs. Ltd.*, 2005 WL 1959702, at *2 (E.D.N.Y. Aug. 16, 2005)

(district courts are not required "to undertake an analysis of the admissibility of each piece of

evidence sought").  Accordingly, the Court is inclined to simply grant the relief requested based

on its independent review of the Applicants' *prima facie* showing and its conclusion that the

discovery sought in fact relates to claims and defenses they intend to assert in good faith in the

Lago Agrio Litigation, the Criminal Proceedings, and the BIT Arbitration.  However, in order to

satisfy itself that the requested discovery bears upon those proceedings, and because it finds the

analysis helpful in determining whether to exercise its discretion to grant the relief requested, *see infra.* Part IV.B.4, the Court will engage in a more detailed examination.

Generally speaking, the standards for discovery set out in the Federal Rules of Civil

Procedure also apply when discovery is sought under § 1782(a).  *See Bayer*, 146 F.3d at 195; *Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir.), *cert. denied*, 130 S. Ct. 59 (2009).  Relevancy

in this context is "broadly construed and encompasses any material that bears on, or that

reasonably leads to other matters that could bear on, any issue that is or may be in the case."

*Alexander v. Fed. Bureau of Investigation*, 194 F.R.D. 316, 325 (D.D.C. 2000); *see also* Fed. R.

Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is

---

[7]  Similarly, there is no indication that the statute should be read to require applicants to put forth exhaustive evidentiary materials in the nature of those submitted in these proceedings. In fact, it is not even clear to this Court that an applicant need do anything more than submit a properly authenticated pleading setting forth the claims and defenses asserted in the foreign proceeding and articulate how the discovery sought relates to those claims and defenses.

relevant to any party's claim or defense").  When relevance is in doubt, the district court should

be permissive.  *Sveaas*, 249 F.R.D. at 107.  With these principles in mind, the Court will now

address whether this liberal standard is met with respect to each of the eight categories of

information sought by Applicants.

a. Topics 1 and 2

Applicants' discovery requests with respect to Topics 1 and 2 are the most narrowly

tailored of the group, seeking documents and information concerning the preparation of the

Calmbacher Reports and communications with Calmbacher relating to his work in the Lago

Agrio Litigation.  The Lago Agrio Plaintiffs counter principally that evidence intended to

undermine or prove the bias of a foreign tribunal cannot constitute "use in a proceeding" under §

1782(a), in that foreign tribunals would not find "useful" evidence of their own purported

illegitimacy.[8]  The argument in unavailing.  Evidence tending to show that facts and conclusions

submitted to the court in the Lago Agrio Litigation were fabricated or otherwise manipulated is

clearly relevant to that litigation; it would be probative of the veracity of the evidence submitted

in that case.  There is no indication that Applicants intend to use the evidence sought for

_____

[8] On the one hand, the Republic takes no position on the merits of Calmbacher's allegations, and concedes that the court in the Lago Agrio Litigation will presumably address them in due course.  On the other hand, the Republic contends that the discovery sought in this regard has no bearing upon the BIT Arbitration because there is no allegation that the Republic had any involvement in the preparation of the Calmbacher Reports.  Applicants persuasively argue that the subject matter similarly bears upon the BIT Arbitration, in which Chevron claims that the Republic and the Lago Agrio Plaintiffs have actively conspired to pursue a fraudulent judgment against Chevron in the Lago Agrio Litigation.  It is also relevant to the Criminal Proceedings, where it is at least plausible that the charging documents rely upon, among other things, expert reports generated in the context of the Lago Agrio Litigation, and where Pérez and Veiga seek to defend against criminal prosecution in part by pointing out allegedly widespread and systematic improprieties.

purposes of impeaching the integrity of the court itself. In any event, the question under the statute is whether an applicant may make "use" of the discovery sought, not whether the foreign tribunal will ultimately find it "useful," a consideration that comes into play only in the context of the discretionary *Intel* factors. *See infra.* Part IV.B.2. The Court concludes that the discovery sought pursuant to Topics 1 and 2 is relevant to the issues in the foreign proceedings.

b.      Topics 3, 4, and 5

Applicants' discovery requests with respect to Topics 3, 4 and 5 sweep more broadly; here, Applicants essentially seek documents and information concerning the preparation of expert reports generally in the Lago Agrio Litigation.[9] The Interested Parties raise a variety of objections. First, they argue that other expert reports can have no bearing upon the BIT Arbitration because there is no allegation that the Republic was itself involved in the preparation of the reports. Even if that were the case, it cannot be disputed that the veracity of expert reports actually submitted to the court in the Lago Agrio Litigation for its consideration is a relevant issue in that litigation, which is alone sufficient to render the discovery relevant to a foreign proceeding. In any event, Applicants persuasively argue that the subject matter similarly bears upon the BIT Arbitration, in which Chevron claims that the Republic and the Lago Agrio Plaintiffs have actively conspired to pursue a fraudulent judgment against Chevron in the Lago Agrio Litigation.

Next, the Interested Parties aver that the veracity of other expert reports has no bearing

---

[9]  Applicants have expressly limited these requests to expert work product actually submitted to the court in the Lago Agrio Litigation. *See* Applicants' Objection to the Magistrate Judge's Orders Regarding the Scope of Discovery Under 28 U.S.C. § 1782, 10 Misc. 370, Docket No. [41], at 11 n.7.

upon the Criminal Proceedings, apparently on the grounds that the charging documents indicate that the alleged wrongdoing was independently supported by a review of the Office of the Comptroller General, which conducted its own inspections. But the concession that the Comptroller General's review was subsequently corroborated by technical reports from the Lago Agrio Litigation suffices to render those reports relevant to the Criminal Proceedings, and the Court rejects the Republic's attempts to minimize this fact by painting it as a mere parenthetical observation in the charging documents.[10] *See* Stewart Decl., Ex. 10 (Dictamen Fiscal Acusatorio), 10 Misc. 370, Docket No. [1-12]. More to the point, the Court is disinclined to make an ultimate determination as to the relative merits of the parties' interpretations of the charging documents. Pérez and Veiga have argued, not without support, that the Criminal Proceedings were initiated relying at least in part on expert reports prepared in the Lago Agrio Litigation, and the record supports the inference that they seek this information in good faith and intend to introduce the discovery sought in defending against the criminal charges brought against them in Ecuador.

In short, the Applicants have met their *de minimis* burden by adducing evidence that some of the reports originating from Wray's offices in Ecuador may have been fraudulently or improperly prepared (*i.e.*, the Calmbacher Reports). The Court's conclusion in this regard is bolstered by, but not dependent upon, evidence of more widespread and systematic improprieties obtained in the course of other § 1782(a) proceedings, including the outtakes from a documentary

---

[10] Indeed, because the expert reports appear to have provided at least some support for the issuance of the criminal complaints, the conclusion would remain the same even if the indictments did not expressly rely upon the specific reports at issue or relied on evidence in addition to those reports, matters that are disputed by the parties.

film about the Lago Agrio Litigation tending to cast some doubt on the practices of party-affiliated and ostensibly neutral experts in that case. *See, e.g.*, Sobota Decl. Exs. 1-3 (Trs. of Documentary Film Outtakes), 10 Misc. 371, Docket Nos. [61-3], [61-4], [61-5]; *see also In re Application of Chevron Corp.*, No. 10 MC 00001 (LAK), 2010 WL 3489341, at *1 (S.D.N.Y. Sept. 7, 2010) (providing that the same outtakes at issue here "contain substantial evidence of misconduct in and relating to the Ecuadorian litigation."). As before, the Court will defer to the foreign tribunals to assess and weigh such evidence as they see fit. For purposes of these applications, it suffices that the Applicants have met their burden of showing that the discovery sought is for use in, and has some reasonable bearing upon, the foreign proceedings.

c.      Topic 6

Topic 6 is a variation on the same theme. Applicants seek communications concerning the activities of a laboratory known as "Selva Viva," which Calmbacher testified referred to the Lago Agrio Plaintiffs' technical team and their allegedly makeshift testing facilities in a hotel room in Ecuador. *See* Fisher Decl., Ex. 24 (Calmbacher Dep.), 10 Misc. 371, Docket No. [29-26], at 83:17-83:19, 102:3-103:7, 108:20-108:22, 132:11-133:19. The Court agrees with the Interested Parties that Calmbacher's testimony in this respect is not as damning as portrayed by Applicants. Although that testimony may independently raise some concern as to whether the Lago Agrio Plaintiffs' experts at Selva Viva conducted their work pursuant to sound scientific practices, that does not appear to have been the view of Calmbacher himself. *Id.* Nevertheless, the Court cannot say that there is no possibility that the requested discovery may not bear on, or reasonably lead to other matters that could bear on, any issue that is or may be raised in the foreign proceedings. *See Alexander*, 194 F.R.D. at 325. Applicants have alleged that expert

15

reports submitted to the court in the Lago Agrio Litigation were based on testing conducted in a hotel room – an allegation that is supported by Calmbacher's testimony – rather than an accredited laboratory, and, as described above, the proof of environmental contamination submitted to the Court bears upon the issues raised in the foreign proceedings.

Although perhaps a closer call, the Court concludes that Applicants have met their *de minimis* burden under § 1782(a) and the Federal Rules of Civil Procedure with respect to Topic 6 as well. Again, the Court will defer to the foreign tribunals at issue here to determine whether the evidence obtained, if any, is sufficiently probative under their standards of relevance to merit further consideration. The Court is mindful that denial of Applicants' request could preclude the foreign tribunals from determining in their own right the import of such evidence.

Applicants previously proposed limiting Topic 6 to communications relating to the operation and use of Selva Viva as a laboratory in connection with the preparation of expert reports in the Lago Agrio Litigation. *See* Proposed Narrowed Scope of Topic 6 of the Subpoena Attached to the Appl. for Disc. Pursuant to 28 U.S.C. § 1782, 10 Misc. 370, Docket No. [35], at 2. Recognizing that Applicants reserved their rights in making this proposal, the Court agrees that the request, so narrowed, properly excludes discovery of activities unrelated to Selva Vida's use as a laboratory, including development of the Lago Agrio Plaintiffs' litigation strategy, and its analysis is predicated upon the acceptance of that limitation.

d.      Topics 7 and 8

Finally, Applicants' requests concerning Topics 7 and 8 seek documents and information relating to the Criminal Proceedings, in addition to communications between the Republic and persons affiliated with the Lago Agrio Plaintiffs relating to the Settlement Agreement and

Release and the Lago Agrio Litigation. Here, Applicants persuasively argue that these topics go to the very heart of their claims and defenses in all three proceedings, irrespective of the ultimate merits of those claims and defenses. Contrary to the Interested Parties' assertions, Applicants' allegations of collusion and improper cooperation between the Republic and the Lago Agrio Plaintiffs are not so frivolous or pretextual as to warrant denial of the relief sought here. *See Imanagement Servs.*, 2005 WL 1959702, at *5 n.6 (rejecting contention that applicant's complaint in foreign proceeding was "subject to such fatal substantive and procedural difficulties as to render it frivolous or pretextual"). In all three proceedings, Applicants contend that the Republic and the Lago Agrio Plaintiffs have colluded to undermine the Settlement Agreement and Release and have abused the criminal justice system by issuing unfounded criminal indictments in an attempt to secure an illegitimate financial windfall.[11] *See, e.g.*, Fisher Decl. Ex. 13 (Notice of Arbitration), 10 Misc. 371, Docket No. [1-3], ¶¶ 33-65. Whether that contention is

---

[11] In support, Applicants rely in part on an e-mail exchange involving Wray and the Office of the Attorney General. *See* Fisher Decl. Ex. 29 (Aug. 2005 E-mail Exchange), 10 Misc. 371, Docket No. [29-31]. In that exchange, a staff attorney suggests to Wray that the Attorney General "wants to criminally try those who executed the contract" (*i.e.*, the Settlement Agreement and Release). *Id.* The parties offer sharply conflicting interpretations of the exchange in question. The Interested Parties maintain that the e-mail merely sets forth the Republic's good faith defense in an unrelated proceeding – namely, the unenforceability of the Settlement Agreement and Release – and maintain that just because the assertion of such a defense could be viewed as consistent with a shared motive between the Republic and the Lago Agrio Plaintiffs does not establish a shared motive. Additionally, the Republic asserts that the e-mail exchange originated from an office independent from the office responsible for prosecuting criminal cases, and the Lago Agrio Plaintiffs contend that the e-mail actually describes Chevron's attempt to extort the Republic by proposing to drop an unrelated proceeding in exchange for the Republic's intervention in the Lago Agrio Litigation. Applicants, unsurprisingly, argue that the e-mail evidences collusion between the Interested Parties or, at the very least, that they communicated about a strategy to bring criminal charges. Again, the Court need not resolve the parties' competing interpretations of the evidence. The Court is satisfied that the discovery sought relates to issues raised in all three proceedings, and the Applicants have adduced sufficient evidence to that effect.

ultimately meritorious is a matter for other courts; there is sufficient support in the record to allow the discovery sought.

## 2. In a Foreign or International Tribunal

The Lago Agrio Plaintiffs next contend that the BIT Arbitration, which is being conducted under the Bilateral Investment Treaty between the United States and Ecuador and under UNCITRAL rules, does not qualify as a "foreign or international tribunal" under § 1782(a). Those courts that have had the opportunity to address the issue have concluded that such arbitrations fall within the ambit of § 1782(a). *See, e.g.*, *In re Application of Oxus Gold PLC*, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 2009 WL 2877156, at *4 (D. Conn. Aug. 27, 2009). Indeed, other district courts have concluded that the very arbitration at issue in this case falls within the ambit of the statute. *See Republic of Ecuador*, 2010 WL 4027740, at *1-2; *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010).[12] The Court agrees, and concludes that the BIT Arbitration falls within the metes and bounds of § 1782(a).

The Lago Agrio Plaintiffs' related argument is similarly without merit. The notion that it would somehow be premature for this Court to allow the requested discovery until the BIT Arbitration Panel has determined it has jurisdiction to hear the matter runs contrary to clear and unequivocal case law providing that, to fall within the scope of § 1782(a), a proceeding need only

---

[12] The Lago Agrio Plaintiffs are correct in pointing out that there is some disagreement among courts as to whether § 1782(a) may be invoked in connection with purely private foreign arbitrations, *compare Comision Ejecutiva Hidroelectrica del Rio Lempa, LLC v. Nejapa Power Co. LLC*, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008) (concluding it may), *appeal dismissed as moot*, 341 Fed. Appx. 821 (3d Cir. 2009), *with El Paso Corp. v. Comision Ejecutiva Hidroelectrica del Rio Lempa*, 341 Fed. Appx. 31, 33-34 (5th Cir. 2009) (per curiam) (concluding it may not), but that simply is not the issue here.

be "within reasonable contemplation," *Intel*, 542 U.S. at 259, not pending or imminent. Nor is the Court inclined to opine on the likelihood of success of claims made in other fora.[13]

B.     *Application of the* Intel *Factors*

Having determined that it is *authorized* to grant the relief requested, the Court now turns to the factors articulated by the Supreme Court in *Intel* in addressing the discretionary question of whether the requested discovery *should* be allowed. The Court concludes it should, subject to certain limitations described below.

1.     The Jurisdictional Reach of the Foreign Tribunals

Wray is not a party to any of the proceedings at issue. Although the Lago Agrio Plaintiffs disingenuously aver that Wray has been a participant in the Lago Agrio Litigation, he has not had an active role in that litigation since 2006, and even then only as counsel. *See* Burke Decl. Ex. G (Wray Aff.), 10 Misc. 370, Docket No. [13-2], ¶ 4. In addition, while Wray represents that he will subject himself to the jurisdiction of the Ecuadorian courts upon a properly lodged application for discovery in those courts, it is undisputed that he has not done so. Even considering that Wray may hypothetically be subject to the jurisdiction of the Ecuadorian courts, the first factor weighs in favor of granting the Applications. *See Intel*, 542 U.S. at 264.

2.     Nature and Receptivity of the Foreign Tribunals

The Interested Parties argue that Applicants' "rhetoric" concerning collusion and procedural improprieties does not support the conclusion that Ecuador's judiciary is incapable of

---

[13]  Even if the Court were to reach the opposite conclusion on either argument, it would bestow no benefit upon the Lago Agrio Plaintiffs. Because the issues raised in the BIT Arbitration and the Lago Agrio Litigation are coextensive for all purposes relevant to the applications now before the Court, the precise nature of the BIT Arbitration is ultimately immaterial.

providing them with due process, and that Applicants have failed to show that the Ecuadorian courts or the BIT Arbitration Panel would be receptive to the evidence sought.[14] The Interested Parties misconstrue the relevant inquiry, and in so doing, seek to flip the burden of proof on its head. The party resisting discovery must point to "authoritative proof" that the foreign tribunal would reject the evidence sought. *See In re Application of Caratube Int'l Oil Co., LLP*, 2010 WL 3155822, at *4 (D.D.C. Aug. 11, 2010) (citing *Euromepa*, 51 F.3d at 1100; *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) ("proof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery"). There is no indication, let alone authoritative proof, that the Ecuadorian courts or the BIT Arbitration Panel would reject any of the documents or information gathered pursuant to the Applications. Indeed, the record supports only the opposite conclusion, and other courts have found both the Ecuadorian judiciary and arbitral bodies operating under UNCITRAL rules to be generally receptive to federal court assistance under § 1782(a). *See, e.g.*, *In re Application of Noboa*, 1995 WL 581713, at *1-2 (S.D.N.Y. Oct. 4, 1995) (Ecuadorian courts); *In re Petition of Compania Chilena de Navegacion*, 2004 WL 1084243, at *4-5 (E.D.N.Y. Feb. 6, 2004) (same); *Oxus Gold*, 2007 WL 1037387, at *5 (UNCITRAL-governed arbitration); *OJSC Ukrnafta*, 2009 WL 2877156, at *4 (same).

Even assuming, *arguendo*, that the Interested Parties could point to objective proof

---

[14] Along the same lines, but with somewhat greater specificity, the Lago Agrio Plaintiffs contend that the Applications are untimely in light of the procedural posture of the proceedings in the Lago Agrio Litigation. Consonant with the statute's aims, the Court will defer to the courts in Ecuador to resolve the question of the timeliness of any evidentiary submissions; that the evidence sought is for use in a pending or reasonably contemplated proceeding is sufficient to render the Applications timely under § 1782(a).

casting *some* doubt on the Ecuadorian courts' willingness to receive evidence concerning the improprieties allegedly committed by its sovereign (and even setting aside that such proof could have no effect upon the discoverability of such information in connection with the BIT Arbitration), that still would not be sufficient. Section 1782(a) is designed to allow district courts to lend fair and efficient assistance to participants in litigation abroad; it neither contemplates nor requires district courts to become embroiled in a "legal tug-of-war" over whether the foreign tribunal would be receptive to their assistance. *In re Application of Minatec Fin., S.À.R.L.*, 2008 WL 3884374, at *6-7 (N.D.N.Y. Aug. 18, 2008). Where the relevance or admissibility of the evidence sought is sharply disputed, courts are free to rely on the statute's overarching interest in providing fair and efficient assistance and the liberal standards of discovery in granting the application and deferring to the foreign tribunal on contested issues. *See id.*; *Grupo Qumma*, 2005 WL 937486, at *3. Absent a clear and unequivocal indication that the foreign tribunal would not be receptive to the evidence sought, this Court's role is a limited one. There being no authoritative proof that the Ecuadorian courts or the BIT Arbitration Panel would reject the discovery sought, this factor also weighs in favor of granting the Applications. Those tribunals may simply choose to exclude or disregard the information obtained should they find that this Court has overstepped in ordering discovery.

### 3. Circumvention of Foreign Proof-Gathering Restrictions and Policies

The arguments tendered by the Interested Parties with respect to the third *Intel* factor are of no avail, and require little discussion. First, the assertion that Applicants have not previously attempted to obtain comparable discovery in Ecuador or before the BIT Arbitration Panel, even if true, is simply irrelevant to this Court's analysis. Section 1782(a) does not incorporate an

exhaustion requirement, and an applicant is not required to first seek discovery from the foreign tribunal. *See Imanagement Servs.*, 2005 WL 1959702, at *5; *cf. Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 5 (D.D.C. 2005) (attempting to more efficiently obtain use of relevant documents from a district court does not evidence an intent to circumvent foreign discovery rules). Second, the Lago Agrio Plaintiffs' allegation that Chevron has delayed the resolution of their claims and manipulated the U.S. court system by filing multiple *forum non conveniens* motions with other district courts is a total *non sequitor*, and has no bearing upon the Court's analysis here. Similarly, the suggestion that the BIT Arbitration is an "improper" attempt to circumvent prior orders in other jurisdictions misses the mark. There is no evidence in the record – none – that would lead this Court to believe that Applicants have sought to circumvent the proof-gathering procedures or policies of the foreign tribunals or otherwise brought their applications in bad faith. Accordingly, this factor also weighs in favor of granting the Applications.

### 4. The Scope of Discovery

In applying the fourth and final *Intel* factor, courts look to the scope of the discovery sought – in particular, its burdensomeness and intrusiveness. *Intel*, 542 U.S. at 264-65. The Court has previously concluded that the subject matter of the requests are reasonably tailored to speak to the claims and defenses raised in the proceedings at issue, *see supra.* Part IV.A.1, and the Court considers but will not restate its findings in that regard here. Furthermore, with one exception addressed immediately below, the Court concurs that the requests are neither overly broad nor impose an undue burden on Wray. Therefore, this factor too weighs in favor of granting the Applications.

C.      *The Geographic Scope of Production*

The Court's only remaining concern relates to the geographic scope of the requested document production. Applicants seek the production of any and all documents in Wray's possession, custody, or control, regardless of whether those documents may be physically located within the United States or in Ecuador. In addressing this issue, the parties dedicate considerable attention to this Court's prior opinion in *Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp. 2d 45 (D.D.C. 2005). In *Norex*, this Court concluded that the applicant in that case could not invoke § 1782(a) to seek documents located outside the United States, albeit in a situation where the applicant failed to demonstrate that the respondent had any of the documents at issue in its possession, custody, or control. *Id.* at 52-57. In the time since that opinion was issued, a number of courts have had the opportunity to address the question of whether § 1782(a) incorporates a *per se* bar to the discovery of documents located outside the United States. This has resulted in a split of authority. *Compare In re Application of Eli Lilly & Co.*, 2010 WL 2509133, at *4 (D. Conn. June 15, 2010) (rejecting geographic limitation on production of documents), *and Gemeinshcaftspraxis*, 2006 WL 3844464, at *5 (same), *with In re Application of Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007) (respondent cannot be compelled to produce documents located outside the United States), *and In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006) (same).

Ultimately, the Court need not revisit its decision in *Norex* nor opine upon the merits of these disparate approaches. Even assuming there is no absolute bar to the discovery of documents located outside the United States, there is no doubt that courts may exercise their discretion to decline to order the production of documents abroad, and the Court will do so here.

*See Four Pillars*, 308 F.3d at 1080 (regardless of whether § 1782 may ever support discovery of materials outside the United States, district court did not err in leaving to foreign tribunal to determine whether the material sought was subject to discovery); *In re Application of Nokia Corp.*, 2007 WL 1729664, at *5 n.4 (W.D. Mich. June 13, 2007) ("Because the Court considers the location of the documents as a factor in its decision whether to exercise discretion, it need not determine whether § 1782 authorizes discovery of documents located outside of the United States.").

Wray stipulates that he will submit to the jurisdiction of the Ecuadorian courts upon a properly lodged discovery request in that state.[15]  *See* Burke Decl. Ex. G (Wray Aff.), 10 Misc. 370, Docket No. [13-2], ¶¶ 10-11.  In this instance, this Court will defer to the sovereign courts of Ecuador to determine the propriety of the discovery of documents located exclusively within its jurisdiction.  Indeed, particularly in light of the allegations made against a sovereign state, the Court is reticent to intrude upon what is more properly the province of the Ecuadorian courts.  *Cf. Intel*, 542 U.S. at 261 ("comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases").  This is not an abdication of the Court's discretionary role; rather, the Court's restraint is itself the exercise of discretion.  Wray shall be required to produce only responsive documents located within the United States, a category that

---

[15]  To the extent Wray's stipulation may be seen as equivocal, the Court shall condition its Orders upon Wray's submission to the jurisdiction of the courts in the Lago Agrio Litigation and the Criminal Proceedings with respect to the production of responsive documents located within Ecuador.  Nothing in this Opinion nor the accompanying Orders should be interpreted to preclude Applicants from filing a second application under § 1782(a) in the event this condition is not honored.

includes electronically stored information accessible from within this District.[16]

D.      *Claims of Privilege*

Even if discovery is permissible under § 1782(a), Applicants may not seek information that is immune from discovery. Section 1782(a) cautions that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a). Because the jurisdictional basis rests on a federal statute, federal common law governs any assertions of privilege. *See In re Federacion Internationale de Basketball*, 117 F. Supp. 2d 403, 407 (S.D.N.Y. 2000). Furthermore, courts have concluded that the statute's protection extends to privileges recognized by foreign law, but consonant with courts' reticence to delve into complex questions of foreign law, parties are generally required to provide clear and authoritative proof that a foreign tribunal would reject evidence pursuant to a foreign privilege. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 2010 WL 3491534, at *3 (5th Cir. Sept. 8, 2010). Here, the parties' respective arguments concerning privilege are premature. This Court simply is not in a position to resolve blanket claims of privilege and waiver.

**V.  CONCLUSION**

The Court has considered the remaining arguments tendered by the parties, and has concluded that they are without merit. Therefore, and for the reasons stated above, the Court shall GRANT both the Pérez-Veiga Application, 10 Misc. 370, Docket No. [1], and the Chevron

---

[16]  The Court reaches this decision fully aware of the possibility that no responsive documents are located within this District. Wray represents that no responsive documents are located in the United States, though it is unclear whether his statement is intended to reach electronically stored information. *See* Burke Decl. Ex. G (Wray Aff.), 10 Misc. 370, Docket No. [13-2], ¶ 9.

Application, 10 Misc. 371, Docket No. [1], subject to the geographic limitations and conditions described above. In addition, the Court shall:

1.  DENY the Republic's Motion to Strike or, in the Alternative, for Leave to File a Sur-Reply, 10 Misc. 370, Docket No. [50], 10 Misc. 371, Docket No. [65];

2.  GRANT Chevron's Motion to File a Corrected Reply Brief and Corrected Exhibit, 10 Misc. 371, Docket No. [64];

3.  GRANT the Lago Agrio Plaintiffs' Motion to Supplement the Record, 10 Misc. 370, Docket No. [57], 10 Misc. 371, Docket No. [66]; and

4.  DENY Pérez and Veiga's Renewed Motion for a Hearing, 10 Misc. 370, Docket No. [59], as moot.

Appropriate Orders accompany this Memorandum Opinion.

Date:   October 20, 2010

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge